# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **SECURITY ALARM FINANCING ENTERPRISES, INC.** | **CIVIL ACTION NO. 05-0911 consol. with**<br>**CIVIL ACTION NO. 06-0713**<br>**CIVIL ACTION NO. 07-1413** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JANE GREEN** | **MAG. JUDGE KAREN L. HAYES** |

# RULING

Consolidated Defendants, Jayne Green ("Green"),[1] Bobby Green, Chad Burford ("Burford"), and Central Security of North-LA, L.L.C. ("Central Security"), move for summary judgment dismissing the claims of Consolidated Plaintiffs, Security Alarm Financing Enterprises, LP ("SAFE") and Mark Sutton, Trustee on behalf of Central Cellular, Inc. ("CCI").

There are two issues in this case:

(1) Whether there is a genuine issue that SAFE and CCI were on equal footing when they entered into a contract; and

(2) Whether a contract between CCI and SAFE can be enforced against Green, Bobby Green, and Burford.

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 57] is DENIED IN PART and GRANTED IN PART.

---

[1] Mrs. Green's first name is spelled Jane Green in the case caption and in several Court documents. The Court, however, will spell her name Jayne Green because that is how it is spelled in her motion for summary judgment.

## I.     FACTS AND PROCEDURAL HISTORY

SAFE is a national corporation that sells, installs, and monitors residential security systems. CCI is a local Louisiana corporation that provides security services in several northern Louisiana parishes. On October 25, 1999, the parties entered into a contract ("the Contract"), whereby CCI agreed to sell alarm monitoring accounts (the "RMR Accounts") to SAFE, along with the right to receive monthly payments for monitoring services under the RMR Accounts. Under the Contract, SAFE would buy RMR Accounts if they met certain criteria. The contract made it clear that "one of the fundamental expectations of SAFE . . . is that the RMR Accounts will be renewed by each Customer after expiration of their current terms and . . . that RMR Accounts customarily are so renewed."

To further the expectation that the RMR Accounts would be renewed, the Contract included a provision entitled Non-Interference, Non-Competition and Confidentiality provision (the "Non-Solicitation Provision"). The first paragraph of that provision stated:

> . . . [N]either Seller nor any of Seller's shareholders, directors, officers, partners, employees, or agents will in any manner, directly or indirectly, solicit, interfere or compete with SAFE or take any other action which is designed, intended, or might be reasonably anticipated to have the effect of (i) adversely affecting SAFE's interest in any RMR Account, or the continued and repeated renewals of the RMR Accounts, or (ii) in discouraging any Customer from maintaining the same business relationships with SAFE after the Closing Date as were maintained with Seller prior to the Closing Date. This paragraph applies to the Customer, as well as to the monitored location; provided, however, that the covenant not to compete described above shall be limited to the city or cities, county or counties in which the monitored location and/or the places of business of the Customer are located and shall be effective so long as SAFE, or any person deriving title to any or all of the RMR Accounts, shall continue the business related to such RMR Accounts . . . .

Green signed the Contract on behalf of CCI, and a Vice President from SAFE also signed the Contract.

On May 26, 2005, SAFE filed an action for injunctive relief against Green ("Case No. 05-0911"), alleging that Green, as an officer and shareholder of CCI, violated the Non-Solicitation Provision by contacting the customers associated with the RMR Accounts and either (1) "solicit[ing] those customers to cancel the contracts between the customers and SAFE;" or (2) "sign[ing] the name of the customers to a cancellation notice." SAFE also alleged that, following the purchase of some of CCI's contracts, Green's son started his own company, Central Security, which effectively took over CCI and its alarm monitoring accounts.

On November 15, 2005, Green filed a motion for summary judgment arguing that the Non-Solicitation Provision was unenforceable under the Louisiana Revised Statute that generally prohibits non-compete agreements. See La. Rev. Stat. § 23:921. On January 11, 2006, Magistrate Judge Karen L. Hayes issued a Report and Recommendation, recommending that Green's motion for summary judgment be granted and that the claims against her be dismissed. Shortly thereafter, the Court issued a Judgment adopting that Report and Recommendation. On March 27, 2007, the Fifth Circuit reversed.

The Fifth Circuit applied the Louisiana Supreme Court's decision in Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 696 So.2d 1373 (La. 1997), and concluded that La. Rev. Stat. § 23:921 does not apply to the Contract in this case if SAFE and CCI were companies on "equal footing." According to the Fifth Circuit, Green had presented no summary judgment evidence from which a court could conclude that CCI was anything other than on equal footing. The court remanded, stating, "[u]nless the district court concludes that the corporations were not on an equal footing, the district court should find that Louisiana Revised Statute Annotated § 23:921 has no application and the contract provision should be enforced."

Security Alarm Fin. Enters., Inc. v. Green, No. 06-30332, 2007 U.S. App. LEXIS 4836, at *10 (5th Cir. Mar. 2, 2007).

Since the Fifth Circuit's decision in Case No. 05-0911, SAFE's Complaint in that case has been amended to include a claim for money damages and additional factual allegations. Case No. 05-0911 has also been consolidated with two related cases. The first, Security Alarm Fin. Enter., L.P. v. Central Security of North La., LLC, No. 06-713, is an action by SAFE against Central Security (the company started by Green's son), Chad Burford (the son of Green and the principal of Central Security), and Robert Green (a former principal of CCI, husband of Green, and step-father to Chad Burford). The Second, In re: Central Cellular, No. 07-1413, is an action originally brought in bankruptcy court by Mark Sutton, Trustee, on behalf of Central Cellular against Green, Central Security, and Burford.

Consolidated Defendants have moved for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder

4

could render a verdict for the nonmoving party. Id.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

### III. LAW AND ANALYSIS

The parties do not dispute, and the court agrees, that the first paragraph of the Non-Solicitation Provision is invalid under La. Rev. Stat. § 23:921 if that statute applies. Consolidated Plaintiffs, however, argue that SAFE and CCI were on equal footing at the time CCI agreed to the Non-Solicitation Provision, and therefore La. Rev. Stat. § 23:921 does not apply to the Contract.

In Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 696 So.2d 1373 (La. 1997), Louisiana's Supreme Court held that the general statutory prohibition of certain types of non-compete agreements, La. Rev. Stat. § 23:921, does not apply to agreements between two corporations on equal footing. Under Savoie, when two companies are on equal footing they are free to contract for any object that is lawful, possible, and determined or determinable. Savoie, 696 So.2d 1373. However, when two companies are not on equal footing, the court held that their contracts have the potential to implicate public policy and thus La. Rev. Stat. § 23:921 will apply to any non-compete agreement between the parties. Id.

### A. Equal Footing

In Savoie, the Louisiana Supreme Court considered three factors to determine whether two companies are on equal footing under a contract: (1) whether the Contract benefitted both parties, (2) whether the noncompetition clause between the parties was fair, and (3) whether the Contract was prepared, reviewed, and approved by the objecting party's attorney.

#### 1. Whether both parties benefitted from the Contract

There is evidence such that a reasonable trier of fact could find that both parties in this case benefitted from the Contract and its Non-Solicitation Provision. A reasonable jury could find that CCI, by agreeing to the Non-Solicitation Provision, was able to sell the RMR Accounts to SAFE at a higher price. When a seller like CCI sells RMR Accounts, buyers are usually concerned that the seller will quickly return to the customers of those accounts and successfully solicit them to re-sign with the seller. This risk is often quite high because the seller usually personally knows the customer affiliated with the account and has confidential information about the account, such as when the account is up for renewal and the amount of the account. In this case, CCI agreed not to exploit this confidential information and re-solicit the customers affiliated with the RMR Accounts. Thus, CCI, by making this concession, was able to sell the RMR Accounts to SAFE at a higher price, i.e., thirty-one times the monthly revenue of each account. Specifically, SAFE was able to obtain over $800,000 for approximately 800 accounts.

#### 2. Whether the Non-Solicitation Clause is fair

In Savoie, four facts led the court to conclude that the non-competition clause was fair to both parties: (1) there was no disparity in the corporations' bargaining power, (2) both parties were equally bound by the non-competition clause, (3) neither party had control over the other,

and (4) the non-competition clause was limited in duration. See Savoie, 696 So.2d at 1380 (relying on factors in Winston v. Bourgeois, Bennett, Thokey and Hickey, 432 So.2d 936, 938 (La. App. 4th Cir. 1983)). The Louisiana Supreme Court was silent on whether these four facts are necessary for a non-compete agreement to be fair, or whether the fairness of a non-compete agreement depends on the facts of each case. Accordingly, this Court must make an educated "Erie guess" as to how the Louisiana Supreme Court would resolve the issues. Audler v. CBC Innovis, Inc., 519 F.3d 239, 249 (5th Cir. 2008). In doing so, the Court may consult a variety of sources, including the general rule on the issue and general policy concerns. Id. (citing Stanley v. Trinchard, 500 F.3d 411, 423-24 (5th Cir. 2007)).

As a matter of policy it is unlikely that the Louisiana Supreme Court intended a concept as amorphous as fairness to be defined solely by the presence of the four specific factors present in a single case. Furthermore, absurd results would occur if restraints on competition were fair only when all four of the Savoie facts are present. To illustrate, if one company was paid an extremely large sum not to compete for a single customer for three years, that agreement would be "unfair" between the companies simply because the restriction did not apply to both parties. For these reasons, the Court is compelled to conclude that Louisiana would find that the fairness of a non-compete agreement between two companies depends on the facts of each agreement and not simply on the presence of the four specific facts that were relevant in Savoie.

With that in mind, the Court turns to the issue of whether the Non-Solicitation Provision was fair.

First, there is evidence that the Non-Solicitation Provision bound only CCI. Under the Non-Solicitation Provision, CCI was precluded from soliciting over 800 of SAFE's accounts,

while SAFE, on the other hand, was free to solicit CCI's accounts.  Indeed, there is evidence that SAFE did and continues to solicit customers by mail in the parishes where CCI provides security services.

Second, there is evidence that there is a discrepancy in the corporations' bargaining power.  SAFE admitted that many of the Contracts terms, particularly the Non-Solicitation Provision , are non-negotiable.  Corporate Counsel for SAFE, Mark Mallah ("Mallah"), testified that the Non-Solicitation Provision  was a "deal breaker" and that the SAFE, to the best of his knowledge, had never agreed to a time restriction of less than ten years on that provision.  The evidence of Consolidated Defendants indicates that SAFE is a national company that is either the twenty-fifth or twenty-sixth largest in its business, while CCI is a small regional business with few employees.  Mallah even admitted that companies that offer more volume are in "a little better position to negotiate" some of the terms of the Contract.

Next, there was arguably no reasonable limitation to the duration of the Non-Solicitation Provision.  Under the Contract, CCI could not solicit or otherwise interfere with the RMR Accounts as long as the customers continued to renew those accounts.  In Savoie the court noted that the non-compete agreement between the parties lasted for only three years after the agreement between the parties expired.  In this case, once CCI's obligation to sell RMR Accounts to SAFE concludes, CCI is precluded from soliciting the RMR Accounts indefinitely.

Notwithstanding these arguments, Consolidated Plaintiffs respond that these points do not conclusively establish that the Non-Solicitation Provision was unfair.  They argue that the Non-Solicitation Provision executed between SAFE and CCI is much narrower in scope than the non-compete agreement in Savoie.  In Savoie, the number of customers that the companies were

limited in soliciting was undefined because the non-compete agreement precluded the companies from competing at all with one another for three years. In this case, however, the Non-Solicitation Provision only precludes CCI from soliciting a capped number of customers, i.e., the approximately 800 customers that CCI sold to SAFE. Furthermore, when CCI stopped selling RMR Accounts to SAFE, the number of RMR Accounts shrank each year because not every RMR Account was renewed.

Moreover, although CCI is precluded from soliciting a shrinking number of customers, CCI can continue to solicit any non-SAFE customer and any existing SAFE customers as long as SAFE did not acquire those customers from CCI. Thus, according to Consolidated Plaintiffs' evidence, CCI is free under the Non-Solicitation Provision to compete with SAFE and free to provide security services anywhere in the country.

The Consolidated Plaintiffs also note that there is no evidence that CCI was under duress or compelled to enter into the Contract. Before agreeing to sell the RMR Accounts to SAFE, CCI was maintaining some of its own accounts and selling the others to another buyer. When it contracted with SAFE, CCI owned several security accounts. The evidence indicates that instead of accepting the risk that these accounts would continue to remain profitable, CCI decided to defer that risk to SAFE and sell the accounts at thirty-one times the expected monthly revenue. Furthermore, although Consolidated Defendants have emphasized that CCI is smaller than SAFE, the discrepancy in size does not establish that the Contract was unfair. See Meadowcrest v. Tenet Health Sys. Hosp., Inc., 05-12 (La. App. 5 Cir. 4/26/05); 902 So.2d 512, 515 ("The mere fact that Tenet is a national corporation and Meadowcrest is a local partnership does not establish unequal bargaining power between an employer and employee such as to implicate the provisions

of La. R.S. 23:921.").

Consolidated Plaintiffs also argue that SAFE's inflexibility on the terms of the Non-Solicitation Provision does not establish unequal bargaining power. According to them, SAFE's inflexibility reflected a business reality and not a discrepancy in bargaining positions. There is evidence that SAFE and CCI fairly negotiated the price that SAFE would pay CCI for the RMR Accounts. A reasonable jury could further conclude from the evidence that without the Non-Solicitation Provision, it would be almost impossible for SAFE to earn a profit paying this price because CCI could easily re-solicit the RMR Account customers at the end of the current contract term. A reasonable jury, therefore, could find that, despite SAFE's inflexibility, the parties had equal bargaining power.

A reasonable jury could also conclude from the evidence that the circumstances after the agreement to sell the RMR Accounts expired support a finding that the Non-Solicitation Provision was fair to the parties. During the course of the Contract, CCI was able to sell accounts to SAFE, but it was generally limited from selling accounts to other companies without first offering those accounts to SAFE. When the obligation to sell RMR Accounts to SAFE ended, CCI was free to continue providing its security services and was free to continue selling its accounts to any company.

Under these facts a reasonable juror could conclude that the Non-Solicitation Provision was fair.

### 3. Whether an attorney reviewed the Contract on CCI's behalf

In their motion for summary judgment, Consolidated Defendants argue that CCI was not on equal footing with SAFE because CCI did not draft the contract and did not have an attorney

review the Contract. While it is undisputed that the contract was drafted by SAFE, the undisputed evidence also establishes that Jayne Green was sent the Contract by mail and had an opportunity to review it, or to have an attorney review it, before signing.

Thus, weighing the Savoie factors, the Court finds that there are genuine issues of material fact regarding whether the parties were on equal footing.

**B.     Enforcement of the Non-Solicitation Provision Against Jayne Green, Bobby Green, and Chad Burford**

Under Savoie, a non-compete agreement that is invalid under La. Rev. Stat. § 23:921 can still be enforced against two companies on equal footing. When such a non-compete agreement is part of a contract between a company on one side and a company and individuals on the other, Savoie does not invalidate §23:921 as it applies to the individuals. Consolidated Defendants therefore argue that the invalid provision cannot be enforced against the individuals, and, if the individual defendants were parties to the contract, the Court would agree. It appears, however, that none of the individual defendants are actually parties to the contract. Neither Green, Bobby Green, nor Burford were parties to the Contract in their individual capacities; furthermore, none of the pending causes of action appear to seek damages against them under a contract theory of recovery.

Instead, the Amended Complaint against Green and the Complaint against Bobby Green and Burford seek to recover damages against them solely in tort. For example, Consolidated Plaintiffs have alleged that Green, Bobby Green, and Burford, either as officers of CCI or as officers of CCI's alleged alter ego, Central Security, intentionally and without justification, caused CCI to breach the Contract. It is well established in Louisiana that an officer of a

company, although not individually bound under the company's contract, may still be held liable in tort for damages for a breach of that contract, if his intentional and unjustified actions causing the breach were detrimental to the corporation for which he worked or outside the scope of his authority. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La. 1989). Consolidated Plaintiffs have also alleged causes of action against Bobby Green and Burford for misappropriation of trade secrets, unjust enrichment, and unfair trade practices. Clearly, all of these claims sound in tort.

However, in order to be avoid confusion at trial, and to make it clear that no action in contract exists against the individual defendants, to the extent that Consolidated Plaintiffs are seeking to bring a claim in contract against the individuals, those claims are hereby dismissed. To the extent that the Consolidated Plaintiffs are seeking to enforce the Contract against the individual defendants in tort, those claims remain.

### IV. CONCLUSION

For the reasons set forth, Defendants' Motion for Summary Judgment [Doc. No. 57] is DENIED IN PART and GRANTED IN PART. There is a genuine issue of material fact as to whether the parties were on equal footing which precludes summary judgment on that issue. The claims against Green, Bobby Green, and Burford in tort are still pending. The claims against them in contract, to the extent there are any such claims, are hereby dismissed.

MONROE, LOUISIANA, this 21st day of July, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE